William SCHUSSEL, et al., Plaintiffs,

v.

Caspar W. WEINBERGER, et al., Defendants.

Civ. A. No. 82–1432–T.

United States District Court, D. Massachusetts.

April 27, 1983.

Richard J. Hirn, Washington, D.C., Segal, Roitman & Coleman, Harold Roitman, Boston, Mass., for plaintiffs.

Ralph Child, Asst. U.S. Atty., Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

The plaintiff (Schussel) seeks to enjoin the defendants' effort to remove him from his high school teaching position at the Yokota Air Force Base in Japan. The school is operated under the auspices of the United States Department of Defense Dependents Schools (DoDDS). He brings this suit on behalf of himself and the Overseas Education Association (OEA), a teachers union, and an affiliate of the National Education Association (NEA). While at Yokota, Schussel was deeply involved in union activities, and was the Pacific Area Director of the OEA. In his role as union representative, Schussel represented teachers at a considerable number of grievance hearings and filed numerous unfair labor practices charges against DoDDS on behalf of the OEA.

On December 22, 1981, the principal of Yokota High School indicated to Schussel that his position would be declared unnecessary or "excess" the following school year. Believing that this decision was made in retaliation for his union activities, Schussel filed an unfair labor practice charge with the Federal Labor Relations Authority (FLRA). The FLRA refused to issue a complaint after investigating the matter. Subsequently, on March 17, 1982, Schussel withdrew his charge from the FLRA.

Soon thereafter, on March 19, 1982, the Air Force issued a Notice of Reduction in Force (RIF) to Schussel indicating that his position at Yokota would be terminated for the 1982–1983 school year. On March 26, 1982, Schussel filed a grievance over his dismissal by RIF. The DoDDS Acting Regional Director, Emil Wirth, rejected the grievance on April 21, 1982, deeming it to be without merit. Schussel then sought arbitration of his grievance under the collective bargaining agreement of the OEA.

In the meantime, Schussel applied to this court for a temporary restraining order enjoining defendants from removing him from his teaching position at Yokota.[1] This court granted the TRO on May 28, 1982. The TRO was vacated on June 24, 1982 when the court approved the parties' agreement whereby Schussel accepted a DoDDS position in Naples, Italy for the current school year, while continuing to press this suit.

At issue is defendants' motion to dismiss on the alternative grounds that this court lacks subject matter jurisdiction or, that Schussel failed to exhaust his administrative remedies.

## I

In seeking dismissal, defendants first argue that Schussel's allegations amount to a complaint of an unfair labor practice within the meaning of the Federal Service Labor Management Relations Act (FSLMRA or the Act), 5 U.S.C. §§ 7101 et seq., and specifically, 5 U.S.C. § 7116(a)(1) and (2) (1980). Under that statutory scheme, unfair labor disputes are to be resolved by the FLRA, whose final orders may be reviewed by the Court of Appeals. 5 U.S.C. § 7123. Defendants conclude, therefore, that exclusive jurisdiction is in the FLRA, and that this court is without jurisdiction. To underscore their position, defendants point out that Schussel had originally initiated proceedings before the FLRA, in effect acknowledging its jurisdiction.

Schussel responds that his dismissal came in the form of a RIF and, therefore, is reviewable by the Merit Systems Protection Board (MSPB) and not the FLRA. Under 5 U.S.C. § 7116(d), "[i]ssues which can properly be raised under an appeals procedure [MSPB] may not be raised as unfair labor practices prohibited by this section." Thus, matters which are properly within the realm of the MSPB may not be heard by the FLRA. Under 5 CFR § 351.901, a RIF may be appealed to the MSPB. Schussel

1. At the time, Schussel faced serious personal hardship including imminent expulsion from Japan and indefinite separation from his Japanese wife.

notes that the RIF notification to him specifically provided that it could be appealed to the MSPB. He also points out that an individual may opt to have an appeal arbitrated rather than heard by the MSPB, under 5 U.S.C. § 7121(e)(1). Schussel says he chose the arbitration option.

Defendants next argue that even if this matter is not within the jurisdiction of the FLRA, Schussel has not exhausted his administrative remedies. They maintain that he must first submit to arbitration proceedings and then to whatever subsequent administrative remedies may be available to him. Schussel disagrees, contending that he need not exhaust his administrative remedies because he has stated an independent constitutional claim that his dismissal came about because he exercised his First Amendment right to represent the OEA vigorously. Schussel claims that, if permitted to stand, his dismissal would have a significant chilling effect on all future union activities.

## II

■ Regardless of whether this case arises under the FLRA or the MSPB,[2] clearly Schussel has not exhausted his administrative remedies. The issue, however, is whether he must do so, given the circumstances of this case. Generally, it is contrary to National Labor Policy to entertain labor related suits prior to complete exhaustion of administrative remedies. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Courts have strictly adhered to the FLRA requirement that only final orders of the FLRA are reviewable. *Turgeon v. Federal Labor Relations Authority,* 677 F.2d 937 (D.C.Cir. 1982) (refusal of General Counsel of FLRA to issue a complaint was not a final order and, therefore, not judicially reviewable); *See also Garcia v. United States,* 680 F.2d 29 (5th Cir.1982).

■ Exhaustion may not be required in some cases, however, when a plaintiff's First Amendment rights are violated. "The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). Irreparable injury may overcome the requirement of exhaustion. *See Sampson v. Murray,* 415 U.S. 61, 84–92, 94 S.Ct. 937, 850–53, 39 L.Ed.2d 166 (1974). Still, not all claims of First Amendment violations in the context of a labor dispute are cognizable by courts prior to exhaustion. Rather, it is only in those instances where a plaintiff claims to suffer negative consequences from the exercise of "purely political" speech that a court may provide relief even though administrative proceedings may still be pending. *See Carter v. Kurzejeski,* 540 F.Supp. 396 (W.D.Mo. 1982); *Kelly v. United States Postal Service,* 492 F.Supp. 121 (S.D.Ohio 1980).

In *Kelly, supra,* employees of the U.S. Postal Service were dismissed after they wore buttons and tee-shirts bearing political messages. The buttons read, "Death to the Shah—U.S. Imperialism get your Bloody Hands Off Iran." *Id.* at 123, 124. The tee-shirts bore pictures of the Shah of Iran and were captioned, "Shah Wanted, Dead or Alive," with the word "Alive" crossed out. Plaintiffs sought a preliminary injunction reinstating them to their positions. The government contended that the district court lacked jurisdiction in that the dispute was controlled by the terms of the Labor Management Relations Act (LMRA), and properly belonged before the National Labor Relations Board (NLRB).

The court in *Kelly* first noted that § 7 of the LMRA generally protected speech of employees which related to their concerns as employees. It went on to point out, however, that certain types of speech, "are so purely political or so remotely connected to the concerns of employees as employees as to be beyond protection of [LMRA § 7]." *Kelly, supra,* 492 F.Supp. at 126, *quoting, Eastex Inc. v. NLRB,* 437 U.S. 556, 570, 98

2. It is unnecessary to categorize this matter as either an FLRA or an MSPB case. In either event, if plaintiff has stated an independent constitutional claim from which irreparable injury would flow, jurisdiction in this court would be proper.

S.Ct. 2505, 2514, 57 L.Ed.2d 428 (1978). Of relevance here is the court's conclusion that the tee-shirts contained matters of "pure political speech" entitled to First Amendment protection. *Id.* at 127. The court went on to observe that such alleged constitutional violations could cause "irreparable injury" and, therefore, plaintiffs were not required to exhaust the grievance-arbitration process available to them by virtue of their collective bargaining agreement. *Id.* at 127. "In sum, we conclude that this suit does not come before us as a matter of labor law, and we must therefore consider it within a constitutional law framework." *Id.* at 126.

■ The instant complaint, however, is of a different mold. Here we are concerned with what is fundamentally a labor law case involving allegations of anti-union animus against defendants. Schussel exercised speech rights in his role as union representative. He alleges that his assiduous representation on behalf of the union directly resulted in DoDDS' decision to issue a RIF as to his position. The allegation is that DoDDS reacted to Schussel's speech because of its forceful union advocacy, not because of its political content. Surely, the speech of union members and their representatives expressing their concerns as employees deserves careful protection. But this protection is provided by the FSLMRA, through the mechanism of the FLRA and its administrative procedures or by the MSPB and arbitration proceedings thereunder.[3] The plaintiff having failed to exhaust his administrative remedies, the court allows defendants' motion to dismiss.

---

**3.** Though *Kelly* dealt with the NLRB, the FLRA and its procedures are analogous. *See Turgeon* *v. FLRA, supra,* 677 F.2d at 939; *Carter v. Kurzejeski, supra,* 540 F.Supp. at 398.