824 F.2d 61
 125 L.R.R.M. (BNA) 3330, 262 U.S.App.D.C. 334
 OVERSEAS EDUCATION ASSOCIATION (A Unified State Affiliate of
the National Education Association), et al., Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
NATIONAL TREASURY EMPLOYEES UNION, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 Nos. 85-1420, 85-1753.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 27, 1987.
Decided July 24, 1987.
 
 Petitions for Review of Orders of the Federal Labor Relations authority.
 Richard J. Hirn, Washington, D.C., for petitioners in No. 85-1420. Cary P. Sklar, with whom Lois G. Williams, Washington, D.C., was on the brief for petitioner in No. 85-1753.
 Ruth E. Peters, Sol., and William E. Persina, Deputy Sol., Federal Labor Relations Authority, with whom Steven H. Svartz, Deputy Sol., and William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C., were on the briefs, for respondents.
 Before WALD, Chief Judge, and STARR and DAVIS*, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STARR.
 Opinion concurring in the judgment in part and dissenting in part filed by Circuit Judge DAVIS.
 STARR, Circuit Judge:
 
 
 1
 These two cases present similar issues concerning the scope of federal court jurisdiction over decisions by the Federal Labor Relations Authority reviewing arbitral awards pursuant to a collective bargaining agreement. In both cases, the FLRA moved to dismiss the petition for review on the ground that the court lacks jurisdiction under 5 U.S.C. Sec. 7123(a)(1) (1982). Applying a jurisdictional analysis previously embraced by our colleagues in the Second, Fourth, Ninth, and Eleventh Circuits, we conclude that jurisdiction lies in only one of the two cases. Specifically, we lack jurisdiction in No. 85-1753, concerning the National Treasury Employees Union (NTEU); however, jurisdiction does lie in No. 85-1420, concerning the Overseas Education Association (OEA). These conclusions render it necessary to reach the merits only in OEA, as to which we are persuaded, for reasons set forth in the latter part of this opinion, that the case should be remanded to the Authority.
 
 
 2
 * A
 
 
 3
 Both petitions center around the scope of the judicial review provision of the Federal Service Labor-Management Relations Statute, 5 U.S.C. Sec. 7101 et seq. (1982 & Supp. III 1985). The Statute establishes essentially a two-track system for resolving labor disputes. Under the first route, a party subjected to an unfair labor practice, as defined in section 7116, can file a charge with the Authority's General Counsel, who must investigate and determine whether a complaint should issue. See 5 U.S.C. Sec. 7118(a).[1] If a complaint is issued, then the matter is adjudicated by the FLRA. Its ensuing decision is, in turn, subject to judicial review. Id. Sec. 7123.
 
 
 4
 The second route involves the collective bargaining agreement. Section 7121 of the statute directs that such agreements include grievance procedures. The Act further mandates that any dispute not satisfactorily resolved through the negotiated grievance procedure is subject to binding arbitration, which may be invoked by either party. Id. Sec. 7121(b)(3)(C). The arbitrator's decision can then be reviewed by the FLRA pursuant to section 7122. Importantly, judicial review of the FLRA's determination in such cases is generally foreclosed by section 7123. That section provides for judicial review only for orders other than those under "section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 711 of this title." 5 U.S.C. Sec. 7123(a) (emphasis added).[2] In other words, the statute as a general matter removes FLRA decisions reviewing arbitral awards from judicial review, but carves out an exception of decisive relevance to the cases at hand--arbitral decisions are to be subjected to judicial scrutiny only when the FLRA's order "involves an unfair labor practice under section 711 of this title." Id.
 
 
 5
 The rationale for circumscribed judicial review of such cases is not hard to divine. It is firmly grounded in the strong Congressional policy favoring arbitration of labor disputes and accordingly granting arbitration results substantial finality. See id. Sec. 7122 (FLRA review of arbitration awards is limited; in absence of exception, arbitral award "shall be final and binding"). The pertinent legislative history indicates that "[i]n light of the limited nature of the Authority's review," Congress found it "inappropriate for there to be subsequent review by the court of appeals in such matters." H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 153, reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2860.
 
 B
 
 6
 Under this dual system, some labor disputes are capable of following either track; a particular action may be capable of characterization as either a statutory unfair labor practice or a violation of the collective bargaining agreement. That is, while an aggrieved party could often invoke the statutory process of the grievance process by alleging a statutory unfair labor practice,[3] the party could choose to characterize the same conduct as a violation of the collective bargaining agreement and invoke the grievance procedures on that ground. This type of situation will present itself, for example, when the collective bargaining agreement mirrors the statutory provisions, as the agreement in NTEU does. See NTEU Reply Brief at 1-3. Congress recognized this dual possibility and left the route selection to the discretion of the aggrieved party, while at the same time mandating that selection of one route precluded use of the other. To this end, section 7116(d) directs that "issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under [section 7116], but not under both procedures." Id. Sec. 7116(d).[4]
 
 
 7
 Both routes offer one level of review--the statutory route provides for judicial review of the FLRA's decision and the grievance route provides for FLRA review of the arbitrator's decision. The difference between the two routes--and the central issue in both of the cases before us--is that the grievance route precludes judicial review, unless, again, the Authority's order "involves an unfair labor practice under section 711." Id. Sec. 7123(a)(1). It is clear that if a dual-natured type of complaint were pursued as a statutory unfair labor practice, any FLRA order would be subject to judicial review under section 7123(a)(1), even if the aggrieved party chose to utilize the grievance/arbitration route. The precise issue presented by these two cases is whether a complaint with this potential dual nature which is pursued along the grievance/arbitration route as a violation of the collective bargaining agreement, not the statute, is nonetheless subject to judicial review because, in the words of section 7123(a)(1), it "involves an unfair labor practice under section 711."
 
 C
 
 8
 Our interpretive task begins, as always, with the language of the statute. See, e.g., United States v. Hohri, --- U.S. ----, ----, 107 S.Ct. 2246, 2250, 96 L.Ed.2d 51 (1987); Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301-02, 85 L.Ed.2d 692 (1985); American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); Consumer Products Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); Vanguard Interstate Tours, Inc. v. ICC, 735 F.2d 591, 597 (D.C.Cir.1984) (quoting GTE Sylvania, Inc., 447 U.S. at 108, 100 S.Ct. at 2056); Symons v. Chrysler Corp. Loan Guarantee Bd., 670 F.2d 238, 241 (D.C.Cir.1981). Section 7123(a)(1) provides in relevant part as follows:
 
 
 9
 (a) Any person aggrieved by any final order of the Authority other than an order under--
 
 
 10
 (1) section 7122 of this title (involving an award of an arbitrator), unless the order involves an unfair labor practice under section 711 of this title,
 
 
 11
 * * *
 
 
 12
 may ... institute an action for judicial review.
 
 
 13
 The effect of this provision, as we explained above, is to make FLRA decisions reviewing arbitral awards judicially reviewable only if they "involve" a statutory unfair labor practice. Two features of the statutory language bear emphasis.
 
 
 14
 First, section 7123(a)(1) identifies precisely what type of unfair labor practices confer jurisdiction on the federal courts. The FLRA order must deal with an unfair labor practice "under" the Act, or more precisely, "under" section 7116. Indeed, it seems somewhat anomalous to have "unfair labor practices" under anything other than the Act. "Unfair labor practice" is, after all, a statutory term of art; what constitutes an "unfair labor practice" is established by statute. See 5 U.S.C. Sec. 7116(a), (b). Nonetheless, the unions in the two cases before us argue, to varying degrees, that "unfair labor practices" do in fact exist outside the statute. In essence, they contend that their collective bargaining agreements have incorporated the statutory unfair labor practices, such that "unfair labor practice" has taken on a more generic meaning, outside its statutory origins. We need not consider whether the term "unfair labor practice," standing alone, could ever contemplate something other than an unfair labor practice as defined in subsections (a) and (b) of section 7116. For in the situation before us, Congress has removed any cause for doubt on such a point by including within section 7123(a)(1) a highly specific cross reference to a provision of the Act, expressly contemplating only the unfair labor practices therein defined.
 
 
 15
 Second, the precision Congress employed in pinpointing exactly which of a potentially broad class of "unfair labor practices" suffice to confer federal court jurisdiction is counterbalanced by Congress' relative generality in selecting the word "involves" as the operative standard. Courts, it has repeatedly been held, should assume that Congress intends the words it employs to have their ordinary meaning. See, e.g. Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984); American Tobacco Co., 456 U.S. at 68, 102 S.Ct. at 1537; Addison v. Holly Hill Co., 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944) (Frankfurter, J.); Inner City Broadcasting Corp. v. Sanders, 733 F.2d 154, 158 (D.C.Cir.1984); Railroad Yardmasters of America v. Harris, 721 F.2d 1332, 1341 (D.C.Cir.1983). The ordinary meaning of "involves" is not difficult to divine; the trusty dictionary informs us that it means "to have within or as a part of itself." Websters' Third New International Dictionary 1191 (unabridged ed. 1981). The language of the statute therefore suggests that the statutory unfair labor practice need not be the central focus or at the core of the FLRA's order, nor even an expressly articulated ground for the FLRA's decision. What the statute requires, more modestly, is that a statutory unfair labor practice be discussed in some way in, or be some part of, the Authority's order.
 
 
 16
 Thus, while the type of unfair labor practice appears to be limited to a narrow, exact class--statutory unfair labor practices--the extent to which that unfair labor practice must be featured in the Authority's determination is less certain. An FLRA holding that there was (or was not) a statutory unfair labor practice committed in a particular case would obviously satisfy this somewhat amorphous standard, but something short of a paradigm case may also sufficiently "involve" a statutory unfair labor practice to confer jurisdiction. In sum, the statutory language is clear and unambiguous with respect to exactly what must be at issue before an FLRA decision reviewing an arbitral award is in turn subject to judicial review--it must be a statutory unfair labor practice. The statute is far less clear on how broadly "involves" should be construed.
 
 
 17
 Passing from the language of the statute to its legislative history, there is nothing that contradicts the clarity with which section 7123(a)(1) speaks with respect to which type of unfair labor practice it contemplates, cf. GTE Sylvania, Inc., 447 U.S. at 108, 100 S.Ct. at 2056,[5] and virtually nothing that bears on the scope of the term "involves." Indeed, the only relevant portion of the legislative history are indications (alluded to earlier) that Congress favored arbitration and accorded arbitration results substantial finality. It was with this policy in mind that Congress severely circumscribed judicial review of FLRA decisions involving arbitral awards. See generally H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 153, reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2860.
 
 
 18
 Thus, after considering the "traditional tools of statutory construction," Chevron, USA v. NRDC, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781-82 n. 9, 81 L.Ed.2d 694 (1984), we find Congress' intent on "the precise question at issue," id. at 842, 104 S.Ct. at 2781, to be considerably less than clear and unambiguous. See also INS v. Cardoza-Fonseca, --- U.S. ----, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). What does seem clear is that Congress required that a statutory unfair labor practice actually be implicated to some extent in the Authority's order. While the precise extent is unclear, the legislative record strongly suggests that the mere fact that conduct is capable of characterization as a statutory unfair practice is insufficient to satisfy the strictures of section 7123(a)(1); the conduct must actually be so characterized and the claim pursued, by whatever route, as a statutory unfair labor practice, not as something else.
 
 
 19
 Any other reading would fly in the face of the proarbitration policy Congress articulated in passing the Act. An interpretation that permitted judicial review of any labor dispute in which the underlying conduct could be characterized as a statutory unfair labor practice drastically limits the finality which Congress intended to attach to arbitral awards. Moreover, such a reading precludes a union or other aggrieved party from electing to pursue and resolve the dispute along the grievance track as a violation of the collective bargaining agreement. A party may well choose to do so knowing full well that it could have opted for a statutory unfair labor practice route, but preferring to benefit from the relatively expeditious and (presumably) final result that arbitration promised. In short, a broader reading of section 7123(a)(1) cannot be reconciled with one of the core purposes of the Act.
 
 
 20
 Fortunately, while the precise issue posed by these two cases has not been previously addressed in this circuit, we do not write on a blank slate. The caselaw treating this issue is somewhat sparse, but the Second, Fourth, Ninth, and Eleventh Circuits have previously considered the question and developed an interpretation in accord with that adumbrated above and solidly grounded in the statute's language and history. In addition to buttressing our proposed reading of the statute, these cases offer guidance with respect to the parameters of the key word, "involves." Accordingly, we turn to an examination of these cases.
 
 D
 
 21
 The first court to address the issue was the Fourth Circuit in AFGE, Local 1923 v. FLRA, 675 F.2d 612 (4th Cir.1982). In that case, the collective bargaining agreement between the union and the agency, the Social Security Administration, provided that the parties would negotiate over any modifications to the performance appraisal system. The agency, however, informed the union that it "intended to establish performance standards ... and that these actions would not be negotiable." Id. at 613.[6] The union invoked the grievance procedures and, eventually, sought arbitration. The arbitrator ruled in the union's favor, but the Authority reversed. Faced with this adverse ruling from the Authority, the union sought judicial review. The court found that whilethe dispute between the union and Social Security could have been litigated in the context of a violation of Sec. 7116(a)(5) [the statutory unfair labor practices provision concerning refusal to negotiate], the fact is that the union invoked the grievance procedure and arbitration on an entirely different theory.
 
 
 22
 Id. The court recognized that the underlying conduct was clearly capable of being characterized as a statutory unfair labor practice, but that no such theory had actually been considered or addressed by the Authority. Under those circumstances, the court concluded that it lacked jurisdiction.
 
 
 23
 The Ninth Circuit next spoke on the issue. In United States Marshals Service v. FLRA, 708 F.2d 1417 (9th Cir.1983), the court, offering the most extensive analysis of the issue to date, faced a situation in which an aggrieved party had chosen to characterize as a violation of the collective bargaining agreement conduct that could have been characterized as a statutory unfair labor practice. The aggrieved party, accordingly, pursued the grievance/arbitration route, but in the wake of an adverse decision by the FLRA, sought judicial review. The Ninth Circuit held that it was without jurisdiction, a conclusion it specifically described as "in accord" with the Fourth Circuit's opinion in AFGE. Id. at 1420. Significantly, the Marshals Service court stated:
 
 
 24
 [T]he proper rule is this: where arbitration has been elected and the Authority reviews exceptions to an award, we have no jurisdiction to review the Authority's determinations unless an unfair labor practice is either explicit or a necessary ground for the final order issued by the Authority.
 
 
 25
 Id. (emphasis added). Thus, the court expressly refused to transform what had theretofore been pursued as a contractual dispute into a statutory unfair labor practice proceeding and thereby confer federal court jurisdiction. Indeed, the Marshals Service court offered as its primary rationale for this refusal the familiar factor of Congress' pro-arbitration policy. The court also opined that judicial review would be appropriate where "an unfair labor practice is necessarily implicated." Id.
 
 
 26
 The primary rationale offered by the Ninth Circuit for its refusal to recharacterize the type of claim involved was Congress' general pro-arbitration policy. For example, the court concluded:
 
 
 27
 To say that we have jurisdiction whenever a contract dispute can also fit within the unfair labor practice sections of the Act, though it has not been so treated either by the arbitrator or the Authority, would be to give too little scope and effect to the arbitration process and to the final review function of the Authority, procedures deemed important to the expeditious review that Congress made a central part of the Act.
 
 
 28
 Id.
 
 
 29
 Thus, Marshals Service is substantially, if not identically, in line with what seems to us the more plausible interpretation of section 7123(a)(1), namely, that a statutory unfair labor practice is an unvarying requirement. The fact that the underlying conduct could be characterized as a statutory unfair labor practice will not suffice. What is more, the Marshals Service opinion offers helpful guidance in discerning when a case "involves" a statutory unfair labor practice; the standard is that a statutory unfair labor practice[7] must be either an explicit ground for, or be necessarily implicated by, the Authority's decision.
 
 
 30
 The Marshals Service test was subsequently accepted first by the Eleventh Circuit, Tonetti v. FLRA, 776 F.2d 929 (11th Cir.1985), and then by the Second Circuit. United States Department of Justice, Bureau of Prisons v. FLRA, 792 F.2d 25 (2d Cir.1986). In our view, Marshals Service and the decisions following its lead are solidly grounded in the statute's language and history. We would be ill-advised to depart from this accumulated wisdom of the circuits, which we shall now seek to apply to the facts at hand.
 
 II
 
 31
 * NTEU involves a decision concerning overtime practices. Specifically, the Special Agent in Charge (SAC) of the Customs Service Office in Baltimore determined to restructure the practices of the Customs Patrol Officers in his command with respect to overtime. Previously, the Patrol Officers had devoted significant time to investigative work. This system led to a high number of hours being compensated at a premium rate as administratively uncontrollable overtime.[8] To reduce this high incidence of overtime, the SAC assigned investigative work to other employees, relegating the Patrol Officers to duties that could be performed without overtime. The SAC effected these changes, however, without notifying NTEU, the Patrol Officers' collective bargaining agent, and without negotiations.
 
 
 32
 Dismayed by the SAC's unilateral action, NTEU filed a grievance alleging a violation of the parties' collective bargaining agreement. Specifically, the union invoked article 37, section 1(b) of the agreement, which provides:
 
 
 33
 The Employer recognizes that the Union has the right to bargain over the procedures which the Employer will observe in exercising its management rights authority, and/or over appropriate arrangements for employees adversely affected by the exercise of the Employer's management rights authorities.
 
 
 34
 In re U.S. Customs Service, No. 83K/27177, slip op. at 5 (Arbitrator's Decision and Award May 11, 1984) (quoting Collective Bargaining Agreement, article 37, Sec. 1(b)), reprinted in No. 85-1753 Joint Appendix (J.A.) at 8.[9] The union contended that by failing to negotiate with respect to the changes in overtime practices, the Customs Service had violated this "duty to bargain."
 
 
 35
 The grievance eventually found its way to arbitration. After a one-day hearing, the arbitrator issued his decision in May 1984. The arbitrator held that the Customs Service had indeed violated the collective bargaining agreement; in the arbitrator's interpretation, the agreement required that negotiations precede any such change. Accordingly, the arbitrator ordered the Customs Service to bargain and awarded the affected Patrol Officers back pay to compensate for the amount of premium pay they would have received. Throughout the decision, the arbitrator addressed only the collective bargaining agreement, without even a citation or reference to (much less a discussion of) any provision of the Act.
 
 
 36
 The Customs Service thereupon filed exceptions with the FLRA, contending primarily that no duty to bargain existed under the agreement and that the award of back pay was contrary to law. The Authority did not disturb the duty-to-bargain ruling, but found the arbitrator's back-pay award contrary to law, see 5 U.S.C. Sec. 5545(c)(2) (statutory provision authorizing premium pay). The FLRA thus set aside that portion of the arbitral award. See id. Sec. 7122(a)(1) (authorizing Authority to take remedial action if an arbitral award is "contrary to any law"). As was true with the arbitrator, the Authority did not address the failure to negotiate as a statutory unfair labor practice; indeed, the Authority did not even address the existence of a duty to bargain because it found the agency's exceptions to that aspect of the arbitral award to be "nothing more than a disagreement" with the arbitrator's conclusions and therefore an insufficient basis to disturb the award. See generally United States Customs Service, Northeast Region, 20 F.L.R.A. 190 (1985).
 
 
 37
 NTEU then filed a petition in this court seeking review of the Authority's decision. The union argues essentially that jurisdiction lies under section 7123(a)(1) because the underlying agency conduct could have been characterized as a statutory unfair labor practice and because the contractual provision at issue mirrors the Act. But an obvious difficulty looms for NTEU's position; its situation is virtually identical to that in Marshals Service itself. Although the underlying conduct was indeed capable of characterization as a statutory unfair labor practice, particularly by virtue of the fact that the agreement tracks the Act, it is clear beyond cavil that it was not so characterized by any party, the arbitrator, or the Authority. It is simply not for this court to try to determine whether "a contract dispute can also fit within the unfair labor practice sections of the Act," Marshals Service, 708 F.2d at 1420, and thereby confer jurisdiction upon ourselves.
 
 
 38
 The fact that the agreement mirrors the statute does nothing to change this result. The way in which a contractual provision is interpreted and applied, it seems to us, may well differ from the manner in which similar (or identical) language in a statute may be interpreted and applied. But in any event, the hard and simple truth, clear from the face of the statute, is that the Authority's order must "involve" a statutory unfair labor practice. The fact that the agreement is similar or even identical to the statute cannot alter the fact that it is not a statute.
 
 
 39
 Here, the union affirmatively chose to invoke the agreement, not the statute. It must now live with the consequences that flow from invocation of this theory. NTEU cannot be permitted at this late stage to transform its grievance claim into a statutory claim. Accordingly, as to NTEU, the FLRA's motion to dismiss for lack of jurisdiction is well-founded.
 
 B
 
 40
 The next case presents quite a different kettle of fish. OEA involves the attempted dismissal from the federal service of a teacher who was deeply involved in union activities. William Schussel is an employee of the Department of Defense Dependents' Schools (DODDS). In 1979, he was assigned to teach industrial arts at Yokota High School in Japan. While teaching at Yokota, Schussel also served as the Pacific Area Director for the Overseas Education Association, a teachers' union. His duties in the latter capacity resulted in frequent absences from school, which in turn caused the principal difficulties in scheduling classes. Eventually, on November 27, 1981, the principal proposed to a DODDS regional office that Schussel's teaching position be eliminated. The stated justification for the proposal was an asserted low level of enrollment in Schussel's industrial arts classes. In December 1981, the principal notified Schussel that his teaching position would be eliminated at the end of the 1981-1982 school year.
 
 
 41
 This action led OEA to file a statutory unfair labor practice charge with the FLRA. Specifically, OEA alleged violations of subsection (1) and (2) of section 7116(a).[10] After being advised on March 9, 1982 by the FLRA Regional Office that there appeared to be insufficient evidence, OEA voluntarily withdrew the charge. On March 19, 1982, Schussel was sent "an advance notice of separation by reduction-in-force." Notice of Reduction-in-Force (Mar. 19, 1982), reprinted in No. 85-1420 J.A. at 103. Schussel responded by filing a grievance under the collective bargaining agreement between DODDS and OEA, complaining about his "improper dismissal from the Federal Service." J.A. at 28.
 
 
 42
 This grievance proceeded through the dispute-resolution process and ultimately resulted in arbitration.[11] Hearings were held before an arbitrator on March 24-25, 1983, and on June 8, 1983, the arbitrator issued his decision and award. The arbitrator first rejected DODDS' argument that the earlier, withdrawn unfair labor practice charge precluded Schussel from filing a grievance. Cf. 5 U.S.C. Sec. 7116(d) (issues that can be raised as either a grievance or statutory unfair labor practice cannot be raised "under both procedures").[12] On the merits, the arbitrator ruled in Schussel's favor, concluding that the attempt to terminate his position was motivated by Schussel's union activities (primarily the absences that those activities required). Accordingly, the arbitrator ordered that Schussel be reinstated to his position at Yokota High School, receive back pay, and otherwise be "made whole." See In re Department of Defense Dependents' Schools-Pacific Region, No. P-82-13T (Arbitration Decision and Award June 8, 1983), reprinted in No. 85-1420 J.A. at 5.
 
 
 43
 DODDS filed exceptions to the arbitrator's decision with the Authority, see 5 U.S.C. Sec. 7122(a), and in May 1985, the FLRA set aside the arbitral award. Department of Defense Dependents Schools, Pacific Region, 17 F.L.R.A. 1001 (1985), reprinted in No. 85-1420 J.A. at 1. The basis for the FLRA's decision was that the dispute was precluded from being raised as a grievance by section 7116(d), which "effectively provides that when in the discretion of the aggrieved party, an issue has been raised under the unfair labor practice procedures, the issue subsequently may not be raised as a grievance." Id. at 1002; see also 5 U.S.C. Sec. 7116(d). To reach this conclusion, the Authority was required to decide whether "the issue which was the subject matter of the unfair labor practice charge is the same as that which is the subject matter of the grievance." 17 F.L.R.A. at 1003. In doing so, the Authority considered exactly what provisions Schussel's unfair labor practice charge alleged had been violated. See id. (citing 5 U.S.C. Sec. 7116(a)(1), (2)). After assessing the nature of the unfair labor practice charge, the Authority expressly concluded "that the issue raised both by the charge and the grievance was the same."
 
 
 44
 The precise issue before us is whether the FLRA's decision "involves" a statutory unfair labor practice by virtue of (1) its discussion of a statutory unfair labor practice and (2) its holding that the arbitration is precluded by the filing of a previous statutory unfair labor practice charge. In our view, the Authority's decision in OEA "necessarily implicates" a statutory unfair labor practice, within the meaning of Judge Kennedy's opinion for the court in Marshals Service, 708 F.2d at 1420.
 
 
 45
 There obviously can be no dispute that the Authority's decision expressly referred to a statutory unfair labor practice. But this reference was no mere citation in passing to the unfair labor practice provision, section 7116(a). To the contrary, the Authority was required to make a detailed assessment of the precise nature of a statutory unfair labor practice charge, and then to compare the substance of that charge with the substance of the grievance before the arbitrator. After doing so, the Authority expressly concluded that the two were identical. Indeed, the FLRA was obliged so to conclude in order to decide that the arbitrator's award was contrary to law. See 5 U.S.C. Sec. 7116(d); cf. id. Sec. 7122(a)(1) (Authority may set aside an arbitral award that is "contrary to any law"). This sort of substantive evaluation of a statutory unfair labor practice abundantly suffices to satisfy the relatively imprecise "involves" standard of section 7123(a)(1).
 
 
 46
 Perhaps recognizing this, the Authority argues for tightening up the standard. Specifically, the Authority contends that section 7123(a)(1) requires that the FLRA decision address "on the merits" a statutory unfair labor practice, Brief for the FLRA in No. 85-1420 at 20, and that its consideration of the statutory unfair labor practice in OEA does not satisfy this "on the merits" test. But this reading is inconsistent with the express language of section 7123(a)(1). The section will simply not bear the restrictive reading championed by the FLRA. To the contrary, a rather general term, "involves," was employed by Congress. As discussed above, this strongly suggests that something less than treatment "on the merits" is required. Moreover, the Marshals Service line of cases has enunciated a test--namely, the statutory unfair labor practice must be either an explicit ground for or be necessarily implicated by the Authority's decision--that is flatly contrary to the interpretation urged by the FLRA. "Necessarily implicated" is obviously not the same as "on the merits." Agreeing with our sister circuits that have interpreted "involves" as meaning "involves" (not "address on the merits"), we apply the Marshals Service test and conclude that the FLRA's decision "necessarily implicates" a statutory unfair labor practice. Accordingly, we have jurisdiction under section 7123(a)(1) to review the Authority's determination.
 
 III
 
 47
 As to the merits of OEA, petitioner argues that a remand is necessary. We agree. Without addressing several of the arguments raised by petitioner,[13] we accept the contention that the unfair labor practice charge and the grievance did not involve the same issue, and that the Authority's dispositive conclusion to the contrary was in error. Here are the reasons for our conclusion.
 
 
 48
 The arbitrator found that there were different factual predicates for the unfair labor practice charge and the grievance; he further determined that the two presented different issues. See In re Department of Defense Dependents' Schools-Pacific Region, No. P-82-13T, slip op. at 9-10 (Arbitration Decision and Award June 8, 1983), reprinted in No. 85-1420 J.A. at 13-14. Particularly in light of the limited scope of the FLRA's review of arbitral awards, see 5 U.S.C. Sec. 7122, it was error for the Authority to override the arbitrator's determination and come to the opposite conclusion.
 
 
 49
 The unfair labor practice charge was filed in December 1981. It alleged that
 
 
 50
 DODDS management is actively proceeding to eliminate the ... Industrial Arts position at Yokota High School while the employee assigned to the position, Mr. Will Schussel, is acting "in the capacity of a representative for a labor organization."
 
 
 51
 No. 85-1420 J.A. at 26. The grievance, in contrast, was filed in March 1982, after Schussel had received a notice of reduction in force, informing him that he would be dismissed. Accordingly, his grievance complained of "improper dismissal from the Federal Service." No. 85-1420 J.A. at 28. Thus, the situation facing Schussel, and the corresponding actions being taken against him, were quite different when he filed the grievance than was the case when the unfair labor practice charge was filed. Whereas in late 1981 the agency was only eliminating a particular position at one high school in the vast DODDS system, by early 1982 the employee was facing the prospect of outright termination.
 
 
 52
 In addition, the grievance presented an alleged violation of the collective bargaining agreement, while the unfair labor practice charge concerned a statutory violation. It would be strange indeed, in light of Marshals Service and the cases following in its wake, to contend that the two present the identical issue. Since the issue in the two proceedings was not the same (either in terms of the factual predicate or the legal framework), section 7116 (d) never came into play. The Authority's invocation of that provision was therefore in error.
 
 
 53
 Accordingly, we remand OEA to the FLRA for further proceedings consistent with this opinion.
 
 
 54
 It is so ordered.
 
 
 55
 DAVIS, Circuit Judge, concurring in the judgment in part and dissenting in part:
 
 
 56
 I agree with the result in No. 85-1420, Overseas Education Association, et al. (OEA), but my reasoning, both on jurisdiction and as to the merits, differs from that of the majority. In No. 85-1753, National Treasury Employees Union (NTEU), I would hold that this court has jurisdiction and therefore I go on to discuss the merits.
 
 I.
 JURISDICTION
 
 57
 The Federal Labor Relations Authority (Authority or FLRA) filed motions to dismiss in both cases on the ground that this court lacks subject matter jurisdiction over the petitions for review under Sec. 7123 of the Federal Service Labor-Management Relations Act. That provision, which sets forth the exclusive scheme for judicial review of FLRA orders, declares in pertinent part:
 
 
 58
 (a) Any person aggrieved by any final order of the Authority other than an order under--
 
 
 59
 (1) section 7122 of this title (involving an award of an arbitrator), unless the order involves an unfair labor practice under section 7118[1] of this title * * * *, may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.
 
 
 60
 (Emphasis added.)
 
 
 61
 Thus, "unless the [Authority's] order involves an unfair labor practice under section 711," an FLRA decision reviewing an arbitration award is immune from judicial review. The Authority's argument is that this immunity extends to both FLRA decisions challenged in the two review petitions now before us. The FLRA concedes that each grievance could plainly have alleged a statutory unfair labor practice under Sec. 7116. However, the Authority characterizes its decision in each case as one "involving an arbitration award in which the grievance alleged only violations of provisions of the parties' [collective bargaining] agreement." This pleading failure, the FLRA concludes, is sufficient to deprive us of jurisdiction. I disagree. In my view, Congress' reference in Sec. 7123 to a case involving "an unfair labor practice under section 711" includes both one involving a direct invocation of and direct reference to a statutory unfair labor practice (as specified in Sec. 7116) and also a case involving invocation of and reference to an equivalent provision of a collective bargaining agreement mirroring one or more of the statutory unfair labor practices of Sec. 7116. Violation of that type of collective bargaining provision is commonly called an "unfair labor practice."
 
 
 62
 To me, the reference in Sec. 7123 to Sec. 7116 serves (with respect to collective bargaining agreements) simply to delimit the kinds of clauses embodied in collective bargaining agreements which Congress desired to characterize as leading to "unfair labor practices" subject to judicial review. Not just anything can be designated an "unfair labor practice" by the collective bargaining agreement. Congress specially singled out (in cases decided by arbitration) true unfair labor practices as defined by Sec. 7116 as eligible for judicial review, and to me the Act does not discriminate between those disputes expressly brought as statutory unfair labor practices and those brought directly under parallel and equivalent provisions of collective bargaining agreements. It is the content of the unfair labor practice that Congress decided to submit to court review, not the label attached to it (statutory or contractual).[2] In particular, I stress that I do not believe that this court has jurisdiction simply because the grievance could have been stated as an unfair labor practice; my position is that, for jurisdiction to exist, the grievance must in fact track and parallel the unfair labor practices spelled out in Sec. 7116. That is the exact trigger opening this court to an appeal. So long as the contract provision involved (in the grievance) mirrors and reflects a statutory unfair labor practice, I can see no reason why Congress would have wished to treat them differently with respect to review by a court of appeals.
 
 
 63
 In support of its theory of nonreviewability, the FLRA cites three cases from other circuits. Principal reliance is placed on American Fed'n of Gov't Employees v. Federal Labor Rel. Auth., 675 F.2d 612 (4th Cir.1982) (AFGE ). That court framed the dispositive issue as "whether the [Authority's] order ... involved an unfair labor practice under Sec. 7116," and concluded "[i]f it did then we have jurisdiction to reach the merits; if it did not, then jurisdiction is lacking." Id. at 613. For reasons which distinguish AFGE from the cases before us, the court held that it lacked jurisdiction. In AFGE, neither the petitioner union nor the arbitrator adverted to any violation of Sec. 7116 or any comparable provision of the collective bargaining agreement. To the contrary, "the union invoked the grievance procedure and arbitration on an entirely different theory." 675 F.2d at 613.[3]
 
 
 64
 Conversely, in the Overseas Education Association case (OEA ), the Authority reversed the arbitration award because it insisted that the earlier-filed unfair labor practice charge and the grievance involved the same issue, namely "whether the Activity's actions were motivated by consideration of the grievant's union activities in violation, either directly or derivatively, of employees' rights under the Statute." Indeed, the FLRA admitted as much when it set aside the arbitrator's award as "contrary to section 7116(d)," thereby denying Schussel a "second bite of the apple." In seeking to slam shut the door to judicial review, the Authority asks this court to embrace a Catch-22. The Authority reversed the arbitrator's decision because it ostensibly involved the same unfair labor practice previously investigated. Now, it urges this court to deny judicial review on the ground that the arbitration case did not involve an unfair labor practice. The Authority cannot have it both ways.
 
 
 65
 Similarly, there are significant distinctions between AFGE and the case involving National Treasury Employee's Union (NTEU ). Petitioners in NTEU presented the unfair labor practice as a violation of Article 37 of the parties' collective bargaining agreement, the language of which explicitly mirrors and reflects the Sec. 7106(b) requirement that the impact and implementation of agency decisions made pursuant to management rights are negotiable. Because Article 37 and Sec. 7106(b) impose identical duties, I think that an Article 37 violation necessarily involves an unfair labor practice. Granting the Authority's motion to dismiss in this case would be tantamount to reading into Sec. 7123(a) a requirement that a formal statutory unfair labor practice charge be filed with the arbitrator in order to preserve the right to judicial review. As I see it, the only predicate to review imposed by the plain language of the statute is that the FLRA order must "involve[ ] an unfair labor practice" of the very type listed in Sec. 7116.[4]
 
 
 66
 Accordingly, I would hold that an unfair labor practice can be presented to an arbitrator in one of two ways: (1) as an express violation of Sec. 7116(a); or (2) as a violation of a labor contract article that imposes the same duties on the agency as are required by the unfair labor practice sections of the statute (Secs. 7116(a) (1)-(8)), i.e., a parallel or tracking provision of the bargaining agreement. No talismanic incantation of the specific statutory provision alleged to have been violated is required where, as here, the contract article violation clearly covers and embraces an unfair labor practice as defined in the statute. Regardless of whether the identical unfair labor practice charge is first raised under the contract or under the statute, the same legal and factual issues arise.
 
 
 67
 In these two cases the specific allegations encompassed a violation of both the contract and the statute. As I have pointed out, the precise issue in AFGE--whether a contractual undertaking to negotiate had been superseded by a later Congressional enactment--distinguishes it from the cases before us. 675 F.2d at 613-14. The question in AFGE was whether there was a duty to negotiate, "not a claim that an unquestioned duty to negotiate had been breached." Id. at 614. See n. 3, supra. Both cases at bar, on the other hand, involve "unquestioned dut[ies]." In OEA, that duty--not to subject an employee to reprisals because of his involvement in union activities--is explicitly embodied in strikingly similar terms in both the parties' agreement and the governing statute.[5] In NTEU, management's duty--to negotiate the impact and implementation of agency decisions made pursuant to management rights--is likewise embodied in the parties' agreement and the governing statute.[6] In both cases, it would seem, the collective bargaining provisions were drafted to mirror their statutory counterparts.
 
 
 68
 In United States Marshals Serv. v. Federal Labor Rel. Auth., 708 F.2d 1417 (9th Cir.1983), the Ninth Circuit held that it lacked jurisdiction to review an FLRA determination except where "an unfair labor practice is either an explicit or a necessary ground for the final order issued by the Authority" or when "an unfair labor practice is necessarily implicated." Id. at 1420. There is no conflict between that holding and my view. When the Authority set aside the arbitrator's award in OEA on the ground that the grievance was barred by the earlier-filed unfair labor practice charge, it "necessarily implicated" the unfair labor practice allegation. Similarly, the subject of the arbitration in NTEU was Customs' failure to negotiate as required both by the parties' agreement and by statute. Merely because the Authority set aside the arbitrator's award as contrary to law does not alter the fact that failure to negotiate is a quintessential unfair labor practice under Sec. 7116. That this unfair labor practice was "necessarily implicated" or "involved" (to use the Sec. 7116 term) is abundantly clear from the transcript of the arbitration hearing, the parties' post-hearing briefs, the arbitrator's decision, and the Authority's decision modifying the arbitrator's award, all of which either specifically refer to or acknowledge the fact that the grievance involved an unfair labor practice.
 
 
 69
 Tonetti v. Federal Labor Rel. Auth., 776 F.2d 929 (11th Cir.1985), clearly did not at all involve an unfair labor practice as defined in Sec. 7116 or in a comparable provision of a collective bargaining agreement; instead, it involved a simple disciplinary proceeding for being AWOL. Nor do I find helpful the Authority's argument that both cases before us involve "pure grievances." See Devine v. White, 697 F.2d 421 (D.C.Cir.1983). The ultimate issue is whether the Authority's order "involves an unfair labor practice."[7] Thus, in proper cases, even "pure grievances" are subject to judicial review. Id. at 445-46.
 
 
 70
 On these grounds I would deny each motion to dismiss. Because of that view, I turn to the merits in both cases.
 
 II.
 OVERSEAS EDUCATION ASSOCIATION--MERITS
 
 71
 The arbitrator in OEA rejected the Department of Defense Dependents' Schools' (DODDS') claim that, because Schussel filed an unfair labor practice charge under Secs. 7116 and 7118 on December 11, 1981, Sec. 7116(d) barred him from pressing the grievance he subsequently filed on March 26, 1982.[8] However, the FLRA set aside the arbitrator's award as "contrary to section 7116(d)." According to the Authority,
 
 
 72
 there was an election in this case in the discretion of the aggrieved party to raise the disputed matter under the unfair labor practice procedures. In this regard the clear purpose and effect of section 7116 (d) is to prevent relitigation of an issue in another forum after a choice of procedures in which to raise the issue has been made by the aggrieved party. Thus, the matter in dispute in this case was prohibited from being relitigated under the grievance procedure, and consequently the grievance before the Arbitrator was precluded by the Statute from consideration. For these reasons, the award is deficient as contrary to section 7116(d) of the Statute and is set aside. (Citations omitted.)
 
 
 73
 I agree that the purpose and effect of Sec. 7116(d) is to prevent relitigation of an issue in a different forum. But the mere initial selection of a procedure in which to raise an issue does not necessarily constitute a binding selection. Schussel's original unfair labor practice charge followed the procedures set forth in Sec. 7118 of the Act. Under that provision, the FLRA general counsel investigates unfair labor practice charges to determine whether sufficient grounds exist for the issuance of a complaint. Only after a complaint is issued does a full hearing and adjudication ensue. When the FLRA advised the union that there was insufficient evidence of an unfair labor practice, the union withdrew the charge. A complaint never issued and the statutory unfair labor practice charge was never adjudicated on the merits.
 
 
 74
 Moreover, as the arbitrator noted, Sec. 105.011 of the FLRA Case Handling Manual (Manual) provides that "a charging party may request withdrawal of a charge at any time." This case involved a "solicited withdrawal," described in Sec. 105.013 of the Manual:
 
 
 75
 When the Regional Director determines that the filing requirements have not been met or that formal proceedings on the charge should not be instituted, the charging party should be given an opportunity to withdraw the charge voluntarily prior to dismissal of the charge. The charging party should be advised in detail of the reasons for the solicitation of the withdrawal.
 
 
 76
 Further, according to Sec. 105.024, a pre-complaint withdrawal "is a disposition without prejudice" to the refiling of the same charge. Because the FLRA never reached a hearing or a determination on the merits regarding the statutory unfair labor practice, the Sec. 7116 barrier to relitigation in a different forum is inapplicable. The FLRA's improper invocation of Sec. 7116, far from preventing Schussel from taking a "second bite at the apple," effectively denied him his first bite. I would therefore reverse the Authority's ruling that the initial unfair labor practice charge, withdrawn without prejudice after preliminary inquiry and before a complaint was issued, bars resort to the arbitration forum.[9]
 
 III.
 NATIONAL TREASURY EMPLOYEES UNION--MERITS
 
 77
 In NTEU, the Authority sustained the arbitrator's holding that the unilateral elimination of overtime assignments, without notification to, or negotiation with, the union, was illegal. Nonetheless, it reversed the arbitrator's back pay award. According to FLRA,
 
 
 78
 after the duties of the affected Patrol Officers were restructured, their duty hours were administratively controllable rather than uncontrollable and they were no longer required to work substantial amounts of unscheduled overtime. Consequently, they were no longer authorized premium pay for administratively uncontrollable overtime under 5 U.S.C. Sec. 5545(c)(2).
 
 
 79
 On appeal, NTEU argues that the arbitrator's award satisfies the requirements of the Back Pay Act, 5 U.S.C. Sec. 5596 (1982), and should be reinstated. The Authority's position is that, to qualify for an award of back pay under the Back Pay Act, the union must satisfy both parts of a two-part test. First, it must demonstrate that an employee has been affected by an unjustified or unwarranted personnel action. Second, the union must show that, but for the improper action, the employee would not have suffered a loss or reduction in pay, allowances, or differentials.[10] Because the agency's improper action in this case was its failure to engage in "impact and implementation" bargaining, the FLRA contends that the union has not, and indeed cannot, satisfy the "but for" component of the test. The Authority considers that, since it cannot be determined with any reasonable certainty what agreement the parties would have reached had bargaining taken place, "there is nothing in the record of this case, and only the sheerest speculation otherwise, to substantiate that bargaining would have precluded losses of pay experienced by the employees."
 
 
 80
 This "insurmountable barrier" to back pay recovery (in "impact and implementation" cases) which had been erected by the FLRA was recently struck down by this court in Professional Airways Sys. Specialists v. Federal Labor Rel. Auth., 809 F.2d 855 (D.C.Cir.1987). In that decision, Judge Starr noted for the court that "under the guise of its 'but for' step, the Authority has established a per se rule against the award of back pay to remedy an 'impact and implementation' bargaining violation." 809 F.2d at 858. Moreover, "where the agency's improper action is failure to engage in 'impact and implementation' bargaining, the adversely affected employee will never be able to satisfy the FLRA's 'but for' test." Id. (emphasis in original).
 
 
 81
 What little outside precedent exists shows that an agency's procedural violation can adversely injure affected employees and may warrant restitutionary relief, including back pay. See Ryder v. United States, 218 Ct.Cl. 289, 585 F.2d 482, 487-88 (1978); Camero v. United States, 179 Ct.Cl. 520, 375 F.2d 777 (1967). Nor does the fact that the agency had the right to change the Customs Patrol Officers' (CPOs') duty hours necessarily shield the agency from an award of back pay. As Professional Airways Sys. Specialists observed, "a procedural miscue by an agency enjoying broad substantive rights can trigger the full panoply of make-whole remedies, including back pay." 809 F.2d at 859 n. 10. The holding in that case--that the Back Pay Act permits a back pay award to affected employees of an agency that has failed to engage in "impact and implementation" bargaining, so long as the employees meet the initial burden of establishing a causal nexus between the violation and the loss of pay--should dictate disposition of the NTEU case. I would remand to the FLRA for reconsideration of whether the union has met its burden of establishing a causal nexus between the failure to engage in "impact and implementation" bargaining and the CPOs' loss of pay. On the remand I would direct, the FLRA should of course be mindful of the admonition in Professional Airways Sys. Specialists that, in applying its "but for" test,the Authority is obliged to recognize the value, fundamental in law and common sense, of procedural integrity; specifically, the Authority must allow for the fact that it is, in the nature of things, highly difficult for an adversely affected employee to establish that bargaining which never occurred (by virtue of the employer-agency's violation) would have prevented the loss of pay occasioned by the change.
 
 
 82
 809 F.2d at 859.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 291(a)
 
 
 [1]
 A decision by the General Counsel not to issue a complaint pursuant to section 7118(a)(1) is not subject to judicial review. See Turgeon v. FLRA, 677 F.2d 937 (D.C.Cir.1982)
 
 
 [2]
 The statute actually refers to section 7118, not section 7116. The reference to section 7118, however, has been recognized to be an error; the correct reference is to section 7116. See AFGE, Local 1923 v. FLRA, 675 F.2d 612, 613 n. 2 (4th Cir.1982). Section 7123(a) reads in its entirety as follows:
 (a) Any person aggrieved by any final order of the Authority other than an order under--
 (1) section 7122 of this title (involving an award of an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title, or
 (2) section 7112 of this title (involving an appropriate unit determination),
 may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.
 5 U.S.C. Sec. 7123(a).
 
 
 [3]
 The statutory process would always be available to address an alleged statutory unfair labor practice. See 5 U.S.C. Sec. 7118. As noted above, the grievance process may also be available to address statutory unfair labor practices because the collective bargaining agreement permits such matters to be grieved. For example, the collective bargaining agreement in OEA is highly general with respect to what issues may be raised in a grievance procedure. The applicable provision permits "any matter of concern or dissatisfaction to a teacher or group of teachers within the recognized unit" to be grieved, with certain exceptions not relevant here. Agreement between the Overseas Education Association and the Department of Defense Dependents Schools, art. 13, Sec. 2, reprinted in No. 85-1420 Joint Appendix (J.A.). This provision is certainly broad enough to permit an aggrieved party to invoke the grievance procedures by alleging a statutory unfair labor practice. The situation referred to in text is somewhat different, involving underlying conduct that could be characterized as a statutory unfair labor practice, but is instead grieved as a violation of the collective bargaining agreement
 
 
 [4]
 Section 7116(d) provides, in its entirety, as follows:
 (d) Issues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section. Except for matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure, issues which can be raised under a grievance procedure may, in the direction of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures.
 5 U.S.C. Sec. 7116(d).
 
 
 [5]
 "Absent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive." 447 U.S. at 108, 100 S.Ct. at 2056
 
 
 [6]
 The agency's refusal was motivated by the passage of the Civil Service Reform Act, which contained a provision requiring that each agency develop a performance appraisal system. See 5 U.S.C. Sec. 4302. The agency believed that negotiation with respect to the establishment of an appraisal system would violate this statutory requirement, a position which the Authority accepted, reversing the arbitrator's contrary ruling. Accordingly, the Authority modified the duty to bargain set forth in the collective bargaining agreement
 
 
 [7]
 Marshals Service uses the more generic phrase, "unfair labor practice," failing to add the more precise qualifying word, "statutory." But nonetheless, Marshals Service should be read as contemplating only statutory unfair labor practices. A contrary reading would ignore the factual situation facing the Marshals Service court. As the court there recounted,
 [t]he question presented by the statute, and on this appeal, is whether, when the arbitration path is chosen and a contract violation is the focus of the arbitration, we nevertheless may review the Authority's disposition of exceptions to the award if the underlying contract violation can be characterized as an unfair labor practice.
 708 F.2d at 1420. The Marshals Service court answered no, clearly accepting--as it was required to do given the clarity of the statute in this respect--that a statutory unfair labor practice was required for federal court jurisdiction. The exact same conduct wrapped in a contractual package would not do. See also id. (a court does not have jurisdiction "whenever a contract dispute can also fit within the unfair labor practice sections of the Act ").
 
 
 [8]
 Administratively uncontrollable overtime pay is allowed when an employee is in a position
 in which the hours of duty cannot be controlled administratively and which requires substantial amounts of irregular or occasional overtime work with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty.
 
 
 [5]
 C.F.R. Sec. 550.151 (1986)
 
 
 [9]
 To a great extent, this provision mirrors two statutory provisions, subsections (b)(2) and (b)(3) of section 7106, which provide as follows:
 (b) Nothing in this section shall preclude any agency and any labor organization from negotiating--
 * * *
 (2) procedures which management officials of the agency will observe in exercising any authority under this section; or
 (3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.
 5 U.S.C. 7106(b)(2)--(b)(3). Since section 7116(a)(1) makes interfering with "any right under this chapter" an unfair labor practice, refusal to bargain as specified in section 7106(b)(2) and (b)(3) could constitute a statutory unfair labor practice.
 
 
 [10]
 These provisions state:
 (a) For the purpose of this chapter, it shall be an unfair labor practice for an agency--
 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;
 (2) to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment.
 5 U.S.C. Sec. 7116(a)(1), (2). It should be noted that while these charges were filed by OEA, not Schussel personally, Schussel signed the charging form in his union capacity. See Charge Against Agency (Dec. 11, 1981), reprinted in No. 85-1420 J.A. at 26.
 
 
 [11]
 After Schussel's grievance had been denied at the final level of administrative review, DODDS issued him travel orders, directing him to return to his home in the United States for separation. In response, Schussel filed suit in United States District Court in Massachusetts, and obtained a temporary restraining order, preventing DODDS from terminating Schussel's position. Schussel v. Weinberger, No. 82-1432-T (D.Mass. May 28, 1982) (Temporary Restraining Order), reprinted in No. 85-1420 J.A. at 63. The parties then reached a settlement whereby Schussel accepted a teaching position with DODDS in Naples, Italy, "without prejudice" to his pending grievance. Accordingly, the district court vacated the temporary restraining order. See Schussel v. Weinberger, 562 F.Supp. 819 (D.Mass.1983)
 
 
 [12]
 The validity of this finding is the primary issue OEA presents on the merits
 
 
 [13]
 Petitioner's primary argument is that the FLRA's interpretation of section 7116(d) was in error because the voluntary dismissal of a statutory unfair labor practice complaint means that the issue in the complaint has not been "raised" as an unfair labor practice. Given that the agency's reading of the statute, to which we owe substantial deference, see Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), seems at first glance clearly in line with the ordinary reading of "raised," we are reluctant casually to overturn the FLRA's interpretation. We need not address this issue, however, due to the much narrower, fact-based error discussed in the text, which requires remanding this case to the Authority. We also need not address at this juncture the arbitrator's conclusion (and Schussel's contention before this court) that the statutory unfair labor practice charge and the grievance involved different parties
 
 
 [1]
 As the court's opinion points out, the reference to "section 7118" is a misprint. The correct reference is to section 7116 which sets forth unfair labor practices under the statute. American Fed'n of Gov't Employees v. FLRA, 675 F.2d 612, 613 n. 2 (4th Cir.1982)
 
 
 [2]
 I do not forget that in this Act Congress stated that collective bargaining "safeguards the public interest" and "contributes to the effective conduct of public business." 5 U.S.C. Sec. 7101(a). Congress also provided expressly for arbitration under collective bargaining agreements. 5 U.S.C. Secs. 7121(a)(1) and 7121(b)(2)(b). There is no indication in the legislative history that arbitrators' decisions involving "unfair labor practices" are to be treated differently depending on the source of the "unfair labor practice."
 The legislative history of Sec. 7123(a) throws little light on the precise coverage of cases in which the FLRA order "involves an unfair labor practice under section 711 of this title," but I am satisfied that that history does not suggest, let alone compel, the Authority's reading.
 
 
 [3]
 That "different theory" was "whether a contractual undertaking to negotiate had been superseded by a later Congressional enactment. The issue was one of negotiability and whether there was a duty to negotiate, not a claim that an unquestioned duty to negotiate had been breached." 675 F.2d at 613-14
 
 
 [4]
 Under the Authority's interpretation of Sec. 7123(a), if employees do not redundantly grieve Sec. 7116 of the statute, even though their collective bargaining agreement fully embraces Sec. 7116 protections, they forfeit their right to judicial review
 
 
 [5]
 Article 2, Section 3(C) of the parties' agreement provides that "[e]ach teacher has the right, freely and without fear of penalty or reprisal, to form, join, and assist the [union] and shall be protected in the exercise of this right. Management shall ensure that teachers are apprised of their rights, and that no interference, restraint, coercion or discrimination is practiced within DODDS to discourage membership in the [union]." The statutory corollary, 5 U.S.C. Sec. 7102, provides that "[e]ach employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right." In turn, Sec. 7116(a)(1) defines it as an unfair labor practice for an agency "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter."
 
 
 [6]
 Article 37, Section 1(b) of the parties' collective bargaining agreement states: "The Employer recognizes that the Union has the right to bargain over the procedures which the Employer will observe in exercising its management rights authority, and/or over appropriate arrangements for employees adversely affected by the exercise of the Employer's management rights authorities." The relevant statute, 5 U.S.C. Sec. 7106(b), preserves the right of the agency and the union to negotiate "procedures which management officials of the agency will observe in exercising any authority under [Sec. 7106]" and "appropriate arrangements for employees adversely affected by the exercise of any authority under [Sec. 7106] by such management officials." Moreover, Sec. 7116(a)(5) identifies as an unfair labor practice the "refus[al] to consult or negotiate in good faith with a labor organization as required by this chapter."
 
 
 [7]
 The FLRA incorrectly asserts that the critical consideration is whether the Authority, in reviewing the arbitrator's award in light of the exceptions before it, addressed whether the subject matter at issue constituted a statutory violation of Sec. 7116(a) or (b). In my view, an FLRA order can "involve an unfair labor practice" without making specific reference to the statute
 
 
 [8]
 In pertinent part, Sec. 7116(d) provides that "issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures ". (Emphasis added.)
 
 
 [9]
 The arbitrator cited the following additional grounds in support of his decision upholding the arbitrability of the grievance: (1) the substantive incidents which triggered the unfair labor practice charge and the grievance are distinguishable; (2) the same party was not involved in both actions; and (3) the issue in the unfair labor practice charge was not the same as grieved upon. I need not, and do not, intimate any view as to the validity of any of these additional justifications
 
 
 [10]
 In the language of the Back Pay Act, an employee who is determined "to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to back pay in the amount that "the employee normally would have earned or received during the period if the personnel action had not occurred." 5 U.S.C. Sec. 5596(b)(1)