**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 916, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 90–9542.

United States Court of Appeals, Tenth Circuit.

Dec. 12, 1991.

Daniel Minahan of Minahan & Shapiro, P.C., Lakewood, Colo., for petitioner.

William E. Persina, Sol., William R. Tobey, Deputy Sol., Arthur A. Horowitz, Associate Sol., and Pamela P. Johnson, Atty., Federal Labor Relations Authority, for respondent.

Before ANDERSON, BARRETT and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Petitioner, American Federation of Government Employees, AFL–CIO, Local 916 (AFGE), seeks review of a decision issued by Respondent, Federal Labor Relations Authority (FLRA), setting aside an arbitration award in favor of AFGE and its representative, Cheryl Prentice. For the reasons expressed below, we do not reach the merits of the FLRA decision, because we agree with the position taken in FLRA's

Motion to Dismiss Petition for Review that we lack jurisdiction over this proceeding.[1]

Only a small subset of the background facts is directly relevant to our disposition. This action may be traced back to certain disruptive conduct engaged in by Ms. Prentice on behalf of AFGE on the premises of her employer, Department of the Air Force, Tinker Air Force Base (the Agency). As a result of such conduct, the Agency suspended Ms. Prentice without pay for fourteen days.[2] AFGE challenged the suspension on behalf of Ms. Prentice by invoking the grievance procedure set up in the parties' collective bargaining agreement, and eventually the matter came before an arbitrator. In ruling for AFGE, the arbitrator concluded that although the suspension would have been appropriate for the cited insubordinate conduct under ordinary circumstances, Ms. Prentice's full-time status as a union representative removed her from the employer-employee relationship sufficiently to preclude imposition of a personal sanction for her noncompliance with orders issued by management personnel. The arbitrator ordered the Agency to rescind the suspension and restore to Ms. Prentice the back pay and other benefits adversely affected.

On review pursuant to 5 U.S.C. § 7122(a), FLRA agreed with the arbitrator's reprobative characterization of Ms. Prentice's conduct, but flatly disagreed on the Agency's authority to take personal corrective action in response thereto and, accordingly, set aside the arbitrator's award. FLRA approved the Agency's action in this case on the basis of a line of authority holding that management's recognized right to discipline employees, see generally 5 U.S.C. § 7106(a)(2)(A) (setting out management's right in language incorporated into parties' collective bargaining

agreement), extends even to otherwise protected activity of union representatives, see generally 5 U.S.C. § 7102(1), where the impropriety in question rises to the level of flagrant misconduct. See, e.g., United States Air Force Logistics Command, Tinker Air Force Base, 34 FLRA 385, 388–91 (1990); Long Beach Naval Shipyard, 25 FLRA 1002, 1005 (1987). AFGE now seeks review of this decision under 5 U.S.C. § 7123(a)(1).

■ As explained in detail in such decisions as Overseas Education Association v. Federal Labor Relations Authority, 824 F.2d 61 (D.C.Cir.1987), the governing statutory scheme establishes a two-track system for resolving labor disputes. See generally id. at 62–64. The aggrieved party may file a statutory unfair labor practice charge with FLRA General Counsel, who determines whether a complaint should issue. If a complaint ensues, the matter is adjudicated by FLRA, subject to judicial review in the court of appeals. On the other hand, the aggrieved party may elect instead[3] to pursue the matter through the statutorily mandated grievance procedure established in the applicable collective bargaining agreement. If resolution by grievance fails initially, the dispute may be brought before an arbitrator, whose determination is subject to *final* review by FLRA. A key feature of the grievance-arbitration process is that once FLRA has rendered its decision, judicial review is unavailable "unless the order involves an unfair labor practice under section 711[6] of this title." 5 U.S.C. § 7123(a)(1).[4] Thus, "[b]oth routes offer one level of review—the statutory route provides for judicial review of the FLRA's decision and the grievance route provides for FLRA review of the arbitrator's decision." Overseas Educ. Ass'n, 824 F.2d at 64.

---

1. By order filed February 4, 1991, this court deferred consideration of FLRA's motion until the case came to issue before the panel assigned to hear it on the merits.

2. The Agency also filed an unfair labor practice charge against AFGE with FLRA General Counsel, which was eventually settled by the parties prior to disposition of the complaint issued thereon by FLRA.

3. The two procedural routes are mutually exclusive. *Overseas Educ. Ass'n,* 824 F.2d at 64 and n. 4 (quoting 5 U.S.C. § 7116(d)).

4. Congress' reference to 5 U.S.C. § 7118 in the quoted passage has generally been recognized as an inadvertent miscitation. *See, e.g., Overseas Educ. Ass'n,* 824 F.2d at 63 n. 2.

■ The issue raised by FLRA's Motion to Dismiss, then, is whether the FLRA order resolving AFGE's grievance "involves an unfair labor practice." The few courts that have wrestled with this somewhat vague language have all basically agreed on a deliberately narrow construction—an order of the FLRA satisfies this requirement only if an unfair labor practice is either an explicit or necessary (implied) ground for disposition of the arbitrated grievance. *See, e.g., id.* at 67–68; *Tonetti v. FLRA,* 776 F.2d 929, 931 (11th Cir.1985); *United States Marshals Serv. v. FLRA,* 708 F.2d 1417, 1420 (9th Cir.1983). The mere fact that a contractual grievance *could have* been pursued, instead, as a statutory unfair labor practice does not suffice to support federal court jurisdiction. *See Overseas Educ. Ass'n,* 824 F.2d at 66, 67, 69; *United States Marshals Serv.,* 708 F.2d at 1420; *American Fed'n of Gov't Employees, Local 1923 v. FLRA,* 675 F.2d 612, 613–14 (4th Cir.1982).

The ultimate issue presented for arbitration here was characterized by the arbitrator as follows: "Was the fourteen day suspension of the Grievant, Cheryl V. Prentice for just cause? If not what shall be the remedy?" Arbitrator's Decision at 1. The dispositive ground for the arbitrator's decision was that Ms. Prentice, "working full time for the Union and under its control and direction at all times material to this proceeding[,] ... was not subject to the orders of Agency management in an employer-employee relationship so that her refusal to obey Agency management directives constituted insubordination." *Id.* at 25. In short, "the Agency did not have the right ... to take direct disciplinary action against an employee that it had provided 100% to the union pursuant to their collective bargaining agreement." *Id.* The Agency petitioned for review by FLRA, arguing (1) the arbitrator erred in

concluding that Ms. Prentice, by virtue of her union representative status, ceased to be an employee subject to the management directives of her employing agency and (2) the egregious nature of her conduct brought Ms. Prentice within the proper sphere of management's right to discipline employees. *See* Agency's Petition for an Exception to an Arbitration Award at 5–8. As already noted, FLRA adopted the Agency's position and set aside the award.

At no point in their analyses did the arbitrator or the FLRA consider, explicitly or impliedly, whether Ms. Prentice or the Agency had committed a statutory unfair labor practice under § 7116.[5] Neither party's position required, as a prerequisite for relief under the collective bargaining agreement, a finding that its opponent had violated § 7116. While the decisions rendered below may well indicate how a (foregone) correlative unfair labor practice charge would have fared, that would be the case in any instance where the dispute could have been pursued on either procedural track—and we have already seen that it is the particular procedure invoked and disposition obtained, rather than the dual remedial potential of the claim, that controls its characterization for purposes of judicial review under § 7123(a)(1). *See Overseas Educ. Ass'n,* 824 F.2d at 66–69; *United States Marshals Serv.,* 708 F.2d at 1420–21; *American Fed'n of Gov't Employees, Local 1923,* 675 F.2d at 613–14. Indeed, even where a prior arbitration determination provides the necessary basis for a subsequent unfair labor practice charge regarding conduct in violation thereof, § 7123(a)(1) continues to preclude "indirect" judicial review of the former. *See United States Dep't of Justice,* 792 F.2d at 28–29. In short, to support judicial review under § 7123(a)(1), an unfair labor practice must be an actual part, not just a foregone alternative characterization or a

---

5. FLRA did expressly assess the import of the management rights provisions of § 7106(a) vis a vis Ms. Prentice's protected status as a union representative under § 7102, but construction of these collateral sections of the statutory scheme does not supply an alternative basis for judicial review where § 7116 plays no part in the analysis of the arbitrated dispute. *See United States*

*Marshals Serv.,* 708 F.2d at 1421. The limited judicial review permitted by § 7123(a)(1) is yoked exclusively to § 7116, and the general reasons for a strict construction of the former provision have been aptly expressed on more than one occasion. *See Overseas Educ. Ass'n,* 824 F.2d at 65–66; *United States Dep't of Justice v. FLRA,* 792 F.2d 25, 28–29 (2d Cir.1986).

potential consequence, of the underlying controversy. Such is not the case here, and AFGE's assertion that discipline of a union representative such as Ms. Prentice for protected activity could (also) constitute a statutory unfair labor practice, *see* Petitioner's Reply to Respondent's Motion to Dismiss at 5–6, is beside the point.

For its own, perhaps thoughtful reasons, AFGE chose to pursue this dispute with the Agency as a grievance under the parties' collective bargaining agreement, rather than as an unfair labor practice charge under the statute, and must now accept the consequences of that decision. AFGE "cannot be permitted at this late stage to transform its grievance claim into a statutory claim. Accordingly, ... FLRA's motion to dismiss for lack of jurisdiction is well-founded." *Overseas Educ. Ass'n,* 824 F.2d at 69; *see also Tonetti,* 776 F.2d at 931; *United States Marshals Service,* 708 F.2d at 1421.

For clarity as well as thoroughness, one potential point of support passed over by AFGE should be expressly addressed, as it helps to elucidate, by way of example, what *is* encompassed within the phrase "involves an unfair labor practice under section 711[6]." In *Overseas Education Association,* the court dismissed one petition for review under § 7123(a)(1) but exercised jurisdiction over a second. The latter involved an FLRA decision to set aside an arbitration award in favor of the grievant union under the mutual-exclusivity provision of § 7116(d), *see supra* at 277 n. 3, because the union had previously filed and withdrawn, for lack of evidence, a statutory unfair labor practice charge regarding the same incident. *Overseas Education Association,* 824 F.2d at 70. Resolution of the exclusivity issue, which required FLRA "to decide whether 'the issue which was the subject matter of the unfair labor practice charge is the same as that which is the subject matter of the grievance,'" necessitated FLRA's consideration of "exactly what provisions [of § 7116 the] unfair labor practice charge alleged had been violated." *Id.* at 70 (quoting FLRA decision under review). The court concluded:

There obviously can be no dispute that [FLRA's] decision expressly referred to a statutory unfair labor practice. But this reference was no mere citation in passing to ... section 7116(a). To the contrary, [FLRA] was required to make a detailed assessment of the precise nature of a statutory unfair labor practice charge, and then to compare the substance of that charge with the substance of the grievance before the arbitrator. After doing so, [FLRA] expressly concluded that the two were identical. Indeed, the FLRA was obliged so to conclude in order to decide that the arbitrator's award was contrary to law.... This sort of substantive evaluation of a statutory unfair labor practice abundantly suffices to satisfy the relatively imprecise "involves" standard of section 7123(a)(1).

*Id.* at 71.

In the instant case, AFGE argued before the arbitrator that "the Agency cannot file an Unfair Labor Practice charge against the union and then use the same incident as a basis for disciplining the Union's agent." Arbitrator's Decision at 10–11. Admittedly, this point differs somewhat from the issue supporting judicial review in *Overseas Education Association*—we are concerned here only with an equitable argument that pursuit of a statutory charge against the union should preclude an employer from also taking disciplinary action against the particular offending employee for the same incident, which does not involve the duplication between statutory proceeding and arbitration prohibited by § 7116(d) and discussed in *Overseas Education Association.* Nevertheless, it could be insisted that resolution of the objection raised by AFGE would still necessitate the "sort of substantive evaluation of a statutory unfair labor practice" deemed sufficient to satisfy § 7123(a)(1) in *Overseas Education Association.*

We need not make a definitive, general pronouncement on the issue fleshed out above, however, because the exclusivity objection raised by AFGE was essentially no more involved in the dispositions reached below than § 7116 itself. For the arbitrator, this objection to the Agency's suspension of Ms. Prentice was rendered irrelevant by his determination that regardless of how many bites of the apple were in-

volved, the Agency *never* had the right to discipline a full-time union representative for the conduct engaged in by Ms. Prentice.[6] The matter was not subsequently raised before, or discussed by, FLRA.

As a last resort, AFGE argues that whatever the scope of § 7123(a)(1), it is entitled in any event to review of its claim that Ms. Prentice's conduct was protected by the First Amendment and that FLRA erred in failing to consider the constitutional ramifications of the dispute. Since these constitutional matters were neither raised nor considered below, and AFGE has not asserted any extraordinary circumstances to excuse its neglect in this regard, they are properly beyond our reach. *EEOC v. FLRA,* 476 U.S. 19, 23, 106 S.Ct. 1678, 1680–81, 90 L.Ed.2d 19 (1986) ("No objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances.") (quoting 5 U.S.C. § 7123(c)).

FLRA's Motion to Dismiss is GRANTED, and AFGE's Petition for Review is DISMISSED. All other pending motions are DENIED.

---

**6.** The only potential issue regarding procedural exclusivity recognized by the arbitrator, i.e., that involving the statutorily proscribed pursuit of both an unfair labor practice charge *and* a grievance *against AFGE,* was similarly deemed moot because the Agency did not, in fact, file a grievance against AFGE.