The UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

American Federation of Government Employees, AFL–CIO (AFGE), Intervenor.

FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

American Federation of Government Employees, AFL–CIO (AFGE), Intervenor,

v.

The UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, Respondent.

Nos. 92–1078, 92–1250.

United States Court of Appeals, Fourth Circuit.

Argued July 9, 1992.

Decided Oct. 1, 1992.

As Amended Nov. 2, 1992.

Fred P. Phillips, IV, Civil Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Mark B. Stern, on brief), for petitioner.

James Frederick Blandford, Federal Labor Relations Authority, Washington, D.C., argued (William E. Persina, Sol., William R. Tobey, Deputy Sol., Arthur A. Horowitz, Associate Sol., on brief), for respondent.

Mark D. Roth, Charles A. Hobbie, Alexia F. McCaskill, American Federation of Government Employees, AFL–CIO, Washington, D.C., for intervenor.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

OPINION

ERVIN, Chief Judge:

This case involves a dispute between the Federal Labor Relations Authority (the "FLRA" or the "Authority") and the Social Security Administration of the United States Department of Health and Human Services (the "SSA") regarding the standard that should be applied when assessing whether the parties' collective bargaining agreement has waived certain of the SSA employees' statutory rights. We find that the "clear and unmistakable waiver" analysis, employed in this case by the FLRA, impermissibly biased the interpretation of the relevant collective bargaining agreement against the SSA and, accordingly, we vacate the order of the FLRA, deny the FLRA's cross-petition for enforcement, and remand the case to the FLRA for further proceedings.

I.

On June 22, 1989, Keith Wooten, the union representative of SSA workers in Riverside, California, received an oral warning for distributing labor relations materials to the desks of employees during working hours. A management representative told Wooten that this distribution

violated Article 12, Section 2A of the national collective bargaining agreement between SSA and the American Federation of Government Employees (the "Union"). Article 12, Section 2A of the agreement provides in part:

> Official publications of the Union may be distributed on SSA property by union representatives during the non-duty time of the union representatives who are distributing and the employees receiving the materials. Distribution shall not disrupt operations.

J.A. at 3.

■ To fully understand the nature of the dispute between the SSA and the Union in this case, it is necessary to appreciate the interplay between the language of the collective bargaining agreement and the background statutory rights accorded to the Union representatives. In the absence of the collective bargaining agreement, statutory protection for the distribution of union materials would normally be limited to distribution of materials in non-work areas during non-duty hours. *See* 5 U.S.C. § 7131(b); *General Services Administration*, 27 F.L.R.A. 643, 645 (1987). However, more extensive rights within the scope of statutory protection can be established by an employer's practices with regard to non-union communications. According to the FLRA, if an employer makes an avenue of communication open to non-union sources, the employer cannot discriminate against the union in the use of those communication channels. *See Department of Defense Dependent Schools, Mediterranean Region, Naples American High School (Naples, Italy)*, 21 F.L.R.A. 849, 850 (1986).

It is undisputed in this case that SSA allowed distribution to employees' desks, during work time, of non-union related communications. As a result, resolution of this dispute ultimately depends on whether Article 12, Section 2A of the collective bargaining agreement is read to restrict the union's distribution rights that would otherwise be established by the agency's prac-

tice with regard to non-union communications, or whether the collective bargaining agreement contemplates the accrual of such rights in addition to the rights explicitly conferred by the text of the agreement.

On July 14, 1989, Wooten filed a grievance, seeking a retraction of the oral warning he had been given for the distributions during working hours. On November 29, 1989, the Union filed an unfair labor practice charge, alleging that management had interfered with and coerced the Union in violation of 5 U.S.C. § 7116(a)(1) by treating Wooten disparately from persons distributing non-union communications.[1] The FLRA Administrative Law Judge (the "ALJ") dismissed the Union's complaint, holding that the issue was purely a matter of contractual interpretation of the collective bargaining agreement and that, under the precedent of the FLRA, "even an employer agency's denial of employees' statutory rights is a matter for grievance and arbitration procedures rather than unfair labor practice procedures, if that denial is based on a plausible interpretation of a collective bargaining agreement." J.A. at 18.

The FLRA overturned the ALJ's analysis and ruled in favor of the Union. It based this action on its intervening decision in *Internal Revenue Service, Washington, D.C.*, 39 F.L.R.A. 1568 (1991), which rejected the principle that "differing and arguable" or "plausible" interpretations of a collective bargaining agreement were sufficient to force the FLRA to decline jurisdiction in favor of arbitral resolution of a dispute. Instead, the FLRA held that when statutory rights of the Union were involved, the dispute was a potential unfair labor practice within the jurisdiction of the FLRA. The FLRA took the position that the proper inquiry was whether the union has "clearly and unmistakably" waived the employees' statutory rights. In this case, the FLRA held that Article 12, Section 2A of the collective bargaining agreement could not be interpreted as a "clear and

---

1. 5 U.S.C. § 7116(a)(1) provides, "[I]t shall be an unfair labor practice for an agency—(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter."

unmistakable" waiver of those distribution rights created by the SSA's practice of allowing non-union distribution of materials during working hours. Accordingly, the FLRA ordered the SSA to cease and desist from interfering with the distribution, during duty time, of union materials.

SSA filed a timely petition for review in this court of the FLRA order. The FLRA filed a cross-application for enforcement. After the SSA filed its initial brief in this matter, and one day prior to the FLRA's filing of its initial brief, the United States Court of Appeals for the District of Columbia Circuit reversed the FLRA's decision in *Internal Revenue Service, Washington, D.C.*, upon which the FLRA had based its decision in this case. *See Internal Revenue Service v. FLRA ("IRS")*, 963 F.2d 429 (D.C.Cir.1992). Notwithstanding this development, the FLRA stands by its reasoning in *Internal Revenue Service, Washington, D.C.*, and urges this court to disregard the holding of the D.C. Circuit.

## II.

■ While generally the FLRA's interpretation of the Federal Service Labor–Management Relations Statute (the "FS Labor Statute") is entitled to deference by reviewing courts when "reasonable and defensible," *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), we agree with the D.C. Circuit that the FLRA's "clear and unmistakable waiver" analysis, as it has been applied to cases of this type, "defies common sense." *IRS*, at 431. As the *IRS* opinion points out, under the standard adopted by the FLRA, "the FLRA never resolves the one issue it concedes to be dispositive—what the language of the contract means." *Id.* Instead, in this case, as in *IRS*, the FLRA argues that there is a statutory right, concedes that there is language in the collective bargaining agreement directly bearing on the exercise of that right, and then holds that since there are conflicting plausible interpreta-

tions of the agreement, there can be no "clear and unmistakable waiver" of the statutory right, and therefore that the employing agency must lose the dispute. We believe, as the *IRS* court held, that tipping the balance so severely in favor of the Union when interpreting the language of a collective bargaining agreement impermissibly undermines the integrity of the collective bargaining process, a process that Congress sought to advance through passage of the FS Labor Statute. *See* 5 U.S.C. § 7101(a) (outlining Congressional findings on the benefits of collective bargaining). Accordingly, we reject the FLRA's application of the "clear and unmistakable waiver" standard.

In an effort to define precisely our difficulty with the FLRA's analysis in this case, let us first state our agreement with the general proposition that waivers of statutory rights must be "clear and unmistakable." *See, e.g., Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). Were we in the position of evaluating the "clear and unmistakable waiver" standard purely in the abstract, without any concrete applications by the FLRA to give the standard substance, we would likely find the standard to be a legitimate means of interpreting collective bargaining agreements. However, as a Supreme Court justice has recently remarked, "The meaning of any legal standard can only be understood by reviewing the actual cases in which it is applied." *Planned Parenthood v. Casey*, —— U.S. ——, —— n. 6, 112 S.Ct. 2791, 2843 n. 6 (1992) 120 L.Ed.2d 674, 743 n. 6 (Stevens, J., concurring in part, dissenting in part). We cannot grant deference to the FLRA's recent application of the "clear and unmistakable waiver" test, as epitomized by the present case and *Internal Revenue Service, Washington, D.C.*, because we find that the FLRA has used the test to avoid analysis of relevant contractual language.[2]

---

2. The FLRA's use of the "clear and unmistakable waiver" standard to avoid addressing the contractual language on its merits was more blatant in *Internal Revenue Service, Washington,*

*D.C.* than it was in the present case. In that case, the FLRA concluded that there could be no "clear and unmistakable waiver" based solely on the ALJ's finding that the agency's reading of

■ The mere assertion of a colorable argument by the Union regarding the meaning of a provision of the collective bargaining agreement cannot, by itself, be sufficient to allow the Union to prevail in an unfair labor practice dispute. Instead, we believe the FLRA is obligated to utilize standard methods of contractual interpretation to assess whether there has, in fact, been a waiver of a statutory right. If, among the differing interpretations of a contractual provision, the interpretation asserted by an employing agency, that the provision waives a statutory right, is more plausible than the alternative interpretations, the employing agency must be entitled to prevail.

The parties each devote a significant portion of their argument toward proving whether or not the "clear and unmistakable waiver" standard, as articulated by the FLRA in *Internal Revenue Service, Washington D.C.*, was a reversal from the prior position of the FLRA. The SSA asserts that the FLRA had a prior practice of assessing whether or not the agency's interpretation of the collective bargaining agreement was "plausible" or "differing and arguable," and, if so, dismissing the case to allow resolution, by arbitration, of the contractual dispute. *See, e.g., 22nd Combat Support Group (SAC), March Air Force Base, California,* 30 F.L.R.A. 331 (1987). The FLRA argues that the "clear and unmistakable waiver" standard goes far back in the jurisprudence of the Authority. *See, e.g., Scott Air Force Base,* 5 F.L.R.A. 9 (1981).

It appears that both sides may be right, in that for a number of years the "differing and arguable" and the "clear and unmistakable" standards existed simultaneously in the FLRA precedents. We need not decide which of the doctrines is more firmly rooted in the decisions of the FLRA, because we find that neither standard is mandated by Congressional command.[3] As a result, it lies within the administrative discretion of the FLRA to implement the "differing and arguable" standard, or to reject the standard in favor of a different method of analysis. *See New York Council, Ass'n of Civilian Technicians v. FLRA,* 757 F.2d 502, 508 (2d Cir.) ("Even in the absence of cumulative experience, changed circumstances or judicial criticism, an agency is free to change course after reweighing the competing statutory policies."), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). Our decision today is limited to a holding that the method of analysis that the FLRA has sought to implement, the "clear and unmistakable waiver" standard, is, in its application, unacceptably skewed against the employing agency.

■ The FLRA contends that the "clear and unmistakable waiver" standard is necessary to protect the rights of bargaining unit employees. According to the FLRA, in the absence of the "clear and unmistakable waiver" standard, "a respondent to a[n unfair labor practice] charge could violate protected statutory rights with impunity merely by proffering an interpretation of an existing agreement that was plausible, but without having to demonstrate that the interpretation was correct or even that it is more plausible than alternative interpretations." Cross–Petitioner's Br. at 25. This argument is based on erroneous assumptions. In the first place, it assumes that the FLRA would have to dismiss the charge if it found that the parties had offered "differing and arguable" interpretations of the contract. As explained

---

the provision was "not the only plausible interpretation" of the language. In the present case, the FLRA did not entirely avoid the merits of the dispute. The FLRA engaged in a *pro forma* discussion of the Article 12, Section 2A of the collective bargaining agreement, but the analysis was clearly colored by the Authority's assumption, based on its holding in *Internal Revenue Service, Washington D.C.,* that it need not reach the merits of the contractual dispute if the Union could plausibly argue that there existed alternative interpretations of the contractual language. As we hold above, this skewed method of interpretation simply does not accord sufficient respect to the actual meaning of the collective bargaining agreement.

3. Indeed, neither party even argues that either the "differing and arguable" or the "clear and unmistakable" standard is grounded in any specific statutory provision.

above, it has been the practice of the FLRA, at least in some instances, to dismiss unfair labor practice charges in such situations, in favor of arbitration. *See 22nd Combat Support Group*, 30 F.L.R.A. at 331. However, this practice is entirely a self-imposed deferential doctrine, not compelled by any statutory command. In fact, by the express terms of 5 U.S.C. § 7116(d), an employee is accorded jurisdiction before the FLRA for such claims. According to that provision, "issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice [before the FLRA]." *See also NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 428, 87 S.Ct. 559, 564, 17 L.Ed.2d 486 (1967) (acknowledging that NLRB had jurisdiction to analyze collective bargaining agreement "so far as was necessary to determine" that Union did not waive statutory rights).[4]

■ Even if the FLRA elects to continue its practice of dismissing unfair labor practice charges in situations where the parties advance "differing and arguable" interpretations of a collective bargaining agreement, the rights of aggrieved employees will still be fully protected. Contrary to the FLRA's argument, the mere assertion by an agency of a "plausible" interpretation of the contract will not insulate the agency from review of that interpretation. The agency must still convince an arbitrator that its interpretation is indeed correct. The implicit assumption of the FLRA is that if an employee brings an unfair labor practice charge before the FLRA and the FLRA dismisses the charge because there exist "differing and arguable" interpretations of the contract, the employee will be precluded, on the basis of *res judicata*, from seeking arbitration on the claim. *See American Fed'n of Gov't Employees, Local 1411 v. FLRA*, 960 F.2d 176 (D.C.Cir.

1992) (arbitration of employee's grievance barred by dismissal of an earlier-filed unfair labor practice charge, despite the fact that the charge had been dismissed on procedural grounds without a full hearing on the merits). This assumption is incorrect. As the *IRS* court held, an unfavorable decision, even on procedural grounds, is completely distinguishable from dismissal "*pursuant to a deferral policy adopted by the Authority.*" *IRS*, at 437 n. 9. In the present case, should the FLRA decide to dismiss the case in favor of arbitration based on the existence of "differing and arguable" interpretations of the collective bargaining agreement, the Union would not be barred, by having brought the prior unfair labor practice charge, from contesting the meaning of the agreement in an arbitration proceeding.

■ In sum, we hold that the decision of the FLRA must be reversed because the "clear and unmistakable waiver" analysis employed by the FLRA caused the FLRA to give insufficient weight to the terms of the collective bargaining agreement negotiated between the parties. On remand, the FLRA can choose to follow its past practice of deferring "differing and arguable" interpretations of the collective bargaining agreement to resolution by arbitration. In the alternative, the FLRA can, by articulating reasonable grounds for departing from past decisions such as *22nd Combat Support Group*, choose to resolve the dispute as an unfair labor practice under its own jurisdiction. If the FLRA chooses the latter course, however, it may not analyze the contract language under the "clear and unmistakable waiver" standard in its present form. That standard, in its past application by the FLRA, has been shown to be too easily manipulated against the employing agency. As stated in *IRS*, the only way the choice of forum provision con-

4. The *IRS* court, noting that "it is the arbitrator who is the principal interpreter of collective bargaining agreements under the [FS Labor Statute]," specifically reserved the question of whether the FLRA could exercise jurisdiction over an unfair labor practice charge that turned on interpretation of a collective bargaining agreement. *Id.*, at 438–39. In light of the ex-

plicit language of section 7116(d), however, which provides a clear choice of forum to an aggrieved employee, we cannot see how the FLRA's jurisdiction in this area can be denied. We mean to express no opinion on the wisdom of the FLRA's self-imposed policy to defer jurisdiction in cases of this type; we note only that the policy is not statutorily compelled.

tained in section 7116(d) can have meaning is if "a similar analytic approach [is] followed ... by both the arbitrator and the Authority with respect to matters over which there is concurrent jurisdiction." *IRS*, at 438. Otherwise, there would be no incentive for an employee to *ever* choose arbitration as a means of dispute resolution, and the statutory choice of forum provision would be reduced to a nullity.

We trust that the FLRA, should it opt to follow this course, can establish a standard for reviewing collective bargaining agreements that will guard against findings of waiver of statutory rights when no such waiver was intended, but do so in a manner that does not ignore established canons of contract interpretation. The focus of any means of analysis adopted by the FLRA must remain on interpretation of the express terms of a collective bargaining agreement. The "clear and unmistakable waiver" analysis, as recently applied by the FLRA, was not directed at this end, and accordingly we decline to grant deference to that method of analysis.

### III.

The FLRA's order is hereby vacated and its cross-application for enforcement is denied. The case is remanded to the FLRA for further proceedings consistent with the options outlined above.

*VACATED AND REMANDED WITH INSTRUCTIONS.*